UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ADELAIDO GALEANA, *et al.*,

                            Plaintiffs,

            -against-

MAHASAN, INC., *et ano.*,

                          Defendants.
-----------------------------------------------------------------X

Docket No.: 1:14-cv-3625 (VSB) (KNF)

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION</u>

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   STATEMENT OF FACTS...........................................................................................2

III.  STANDARD .................................................................................................................6

IV.   ARGUMENT................................................................................................................8

      A.  The Parties Agreed to Arbitrate ........................................................................8

      B.  This Dispute Falls Within the Scope of the Arbitration Agreement ...............13

      C.  Congress Did Not Intend FLSA Claims to be Nonarbitrable and,
          as such, this Court Need Not Decide Whether to Stay the Proceedings .........13

      D.  Defendants Did Not Waive Their Arbitration Defense ....................................14

      E.  Plaintiff Adelaido Must Proceed Individually..................................................17

V.    CONCLUSION ..........................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

Agrashell, Inc. v. Composition Materials Co.,
    40 F.R.D. 395 (S.D.N.Y. 1966) ..................................... 15

American Express Co. v. Italian Colors Restaurant,
    ____ U.S. ____, 133 S.Ct. 2304 (2013)................................ 7, 8

Anwar v. Fairfield Greenwich, Ltd.,
    2010 WL 3910197 (S.D.N.Y. Sep. 27, 2010)................................ 11

Arakawa v. Japan Network Group,
    56 F. Supp. 2d 349 (S.D.N.Y. 1999)................................ 8

Arrigo v. Blue Fish Commodities, Inc.,
    704 F. Supp. 2d 299 (S.D.N.Y. Feb. 4, 2010)................................ 14

AT&T Mobility, LLC v. Concepcion,
    ____ U.S. ____, 131 S.Ct. 1740 (2011)................................ 7

Awuah v. Coverall N. Am., Inc.,
    703 F.3d 36 (1st Cir. 2012)................................ 11

AXA Versicherung AG v. New Hampshire Ins. Co.,
    391 Fed. Appx. 25 (2d Cir. 2010)................................ 9

Bensadoun v. Jobe-Riat,
    316 F.3d 171 (2d Cir. 2003)................................ 7

Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.,
    638 F.3d 150 (2d Cir. 2011)................................ 16

Caley v. Gulfstream Aerospace Corp.,
    428 F.3d 1359 (11th Cir. 2005) ................................ 11

Champion Auto Sales, LLC v. Polaris Auto Sales Inc.,
    943 F. Supp. 2d 346 (E.D.N.Y. 2013) ................................ 6

Chanchani v. Salomon/Smith Barney, Inc.,
    No. 99-CIV.-9219 (RCC), 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) ................ 8, 9

Cheshire Place Associates v. West of England Ship Owners Mut. Ins. Ass'n (Luxembourg),
    815 F. Supp. 593 (E.D.N.Y. 1993) ................................ 10

Ciago v. Ameriquest Mortgage Co.,
    295 F. Supp. 2d 324 (S.D.N.Y. 2003)..............................................................14

Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Local 812 Int'l
    Bhd. of Teamsters, 242 F.3d 52 (2d Cir. 2001) ........................................14, 15

Conticommodity Servs. Inc. v. Philipp & Lion,
    613 F.2d 1222 (2d Cir. 1980)..........................................................................16

D.H. Blair & Co. v. Gottdiener,
    462 F.3d 95 (2d Cir. 2006)..............................................................................11

Dieng v. Coll. Park Hyundai,
    No. CIV.A.DKC2009-0068, 2009 WL 2096076 (D. Md. Jul. 9, 2009) ..........................12

Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.,
    53 B.R. 1007 (S.D.N.Y. 1985)..........................................................................10

Gaskin v. Stumm Handel GmbH,
    390 F. Supp. 361 (S.D.N.Y. 1975) ....................................................................10

Gonzalez v. Toscorp, Inc.,
    No. 97-CIV.-8158 (LAP), 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999) ...........................9

Goodman v. Merrill Lynch & Co., Inc.,
    716 F. Supp. 2d 253 (S.D.N.Y. 2010)................................................................15

Green Tree Fin. Corp.-Alabama v. Randolph,
    531 U.S. 79 (2000).........................................................................................7

Harrington v. Atl. Sounding Co., Inc.,
    602 F.3d 113 (2d Cir. 2010).............................................................................7

Hines v. Overstock.com, Inc.,
    380 Fed. Appx. 22 (2d Cir. 2010).....................................................................7

Horvath v. Banco Comercial Portugues, S.A.,
    No. 10-CIV.-4697 (GBD), 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011) ...................9, 11

Horvath v. Banco Comercial Portugues, S.A.,
    461 Fed. Appx. 61 (2d Cir. 2012)..................................................................9, 11

JLM Indus., Inc., v. Stolt-Nielsen SA,
    387 F.3d 163 (2d Cir. 2004)............................................................................6

Katz v. Cellco P'ship,
    No. 12-CIV.-9193 (VB), 2013 WL 6621022 (S.D.N.Y. Dec. 12, 2013)......................... 11

Kingston v. Latona Trucking Inc.,
    159 F.3d 80 (2d Cir. 1998)................................................................................................ 15

LaVoice v. UBS Fin. Servs., Inc.,
    No. 11-CIV.-2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)................... 8

Madison Who's Who of Executive and Prof Is Throughout The World, Inc. v. SecureNet Payment
    Sys., LLC, No. 10-CIV.-364 (ILG), 2010 WL 2091691 (E.D.N.Y. May 25, 2010) ........ 11

Manigault v. Macy's East, LLC,
    318 Fed. Appx. 6 (2d Cir. 2009) ....................................................................................... 8

Martin v. SCI Mgmt. L.P.,
    296 F. Supp. 2d 462 (S.D.N.Y. 2003).............................................................................. 14

Mazza Consulting Group v. Canam Steel Corp.,
    No. 08-CIV.-38 (NGG), 2008 WL 1809313 (E.D.N.Y. Apr. 21, 2008)............................ 7

McCaddin v. Southeastern Marine Inc.,
    567 F. Supp. 2d 373 (E.D.N.Y. 2008) .............................................................................. 7

Metzler v. Harris Corp.,
    No. 00-CIV.-5847 (HB), 2001 WL 194911 (S.D.N.Y. Feb. 26, 2001) ............................ 13

Morales v. Sun Contractors, Inc.,
    541 F.3d 218 (3d Cir. 2008)...................................................................................... 10, 11

Paine Webber Inc. v. Bybyk,
    81 F.3d 1193 (2d Cir. 1996)............................................................................................. 12

Paine Webber Inc. v. Faragalli,
    61 F.3d 1063 (3d Cir. 1995)............................................................................................. 16

Paper Express Ltd. v. Pfankuch Maschinen GmbH,
    972 F.2d 753 (7th Cir. 1992) ........................................................................................... 10

Patel v. Contemporary Classics of Beverly Hills,
    259 F.3d 123 (2d Cir. 2001)............................................................................................. 15

Rent-A-Center, West, Inc. v. Jackson,
    561 U.S. 63 (2010)............................................................................................................. 7

Reynolds v. de Silva,
  No. 09-CIV.-9218 (CM), 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ...................... 8, 13

Schreiber v. K–Sea Transp. Corp.,
  9 N.Y.3d 331, 849 N.Y.S.2d 194, 196 (2007) ................................................ 7

Sinnett v. Friendly Ice Cream Corp.,
  319 F. Supp. 2d 439 (S.D.N.Y. 2004)......................................................... 12, 13

Steele v. L.F. Rothschild & Co.,
  701 F. Supp. 407 (S.D.N.Y. 1988) ........................................................... 13, 14

Sutherland v. Ernst & Young, LLP,
  726 F.3d 290 (2d Cir. 2013)................................................................ 8

Tarulli v. Circuit City Stores, Inc.,
  333 F. Supp. 2d 151 (S.D.N.Y. 2004)........................................................ 9

Thomson-CSF S.A. v. American Arbitration Ass'n,
  64 F.3d 773 (2d Cir. 1995)................................................................ 8

Victorio v. Sammy's Fishbox Realty Co., LLC,
  No. 14-CIV.-8678 (CM), 2015 WL 2152703 (S.D.N.Y. May 6, 2015) ........................... 7

Walther v. Sovereign Bank,
  386 Md. 412 (2005) ..................................................................... 10

Weiss v. La Suisse,
  154 F. Supp. 2d 734 (S.D.N.Y. 2001)........................................................ 9

## Statutes & Commentaries

9 U.S.C. § 1, et seq.......................................................................... 7, 16

9 U.S.C. § 2.............................................................................. 2, 7, 11, 14

9 U.S.C. § 3.............................................................................. 2, 14

9 U.S.C. § 4.............................................................................. 2, 7, 14

29 U.S.C. § 216(b). ........................................................................ 15

N.Y. C.P.L.R. § 7501, (Alexander, Practice Commentary C7501:2)........................... 11

**Rules**

Fed. R. Civ. P. 7(a) ........................................................................................................... 15

Fed. R. Civ. P. 12(b)(1).............................................................................................. 2, 14, 16

Fed. R. Civ. P. 12(b)(6)................................................................................................. 2, 14

Fed. R. Civ. P. 12(c) ......................................................................................................... 15

Fed. R. Civ. P. 12(h)(2)..................................................................................................... 15

Fed. R. Civ. P. 12(h)(3)..................................................................................................... 15

## I.    PRELIMINARY STATEMENT

Defendants Mahasan, Inc. (hereinafter "Mahasan") and Juntima Netprachak (hereinafter "Netprachak") (collectively, the "Defendants") bring this motion to dismiss this action and compel arbitration pursuant to employment agreements (hereinafter "Agreement" or "Agreements") that Plaintiffs entered into as a condition of their employment.   Specifically, Plaintiffs agreed to arbitrate their claims with Defendants as follows:

Plaintiff Nicolas Galeana (hereinafter "Nicolas") signed his Agreement on October 15, 2013.  Plaintiffs Tomas Bautista Hernandez (hereinafter "Hernandez"), Genaro Juarez Galeana (hereinafter "Genaro"), and Enrique Martinez Lopez (hereinafter "Lopez") signed their Agreements on February 10, 2013.  Plaintiffs Mario Perez Vasquez (hereinafter "Vasquez") and Sergio Herrera Santiago (hereinafter "Santiago") agreed to arbitrate by continuing to work for Defendants after being notified of their arbitration policy in or about January and/or February 2013 and subsequently signed arbitration agreements in or about June 2014 in the regular course of Defendants' business.  Finally, Plaintiff Subongkot Longwilai (hereinafter "Longwilai") agreed to arbitrate by continuing to work for Defendants after being notified of their arbitration policy in or about September 2013.

As set forth above, Plaintiffs are bound to arbitrate because they agreed to do so by signing the Agreement and/or continuing to work for Defendants after being presented with the Agreement containing an arbitration provision as part of Defendants' company-wide policy.

Plaintiffs' protests against arbitration are all unavailing.  First, the law is clear.  If you sign a document, you are bound to it even if you do not understand it (due to language issues or otherwise).   Further, Plaintiffs also expressed their intent to be bound to the Agreement by continuing to work after being given reasonable notice of the arbitration policy.

1

Second, there is no prejudice to Plaintiffs by compulsory arbitration. The American Arbitration Association ("AAA") has a rigorous vetting process for all arbitrators (many of whom who specialize in labor and employment law matters) and Plaintiffs will be able to select arbitrators pursuant to standard AAA rules. Plaintiffs will also have a full and fair opportunity to present their claims to a neutral arbitrator.

In contrast, Defendants will be severely prejudiced if Defendants are denied their agreed-upon dispute resolution mechanism. Federal court litigation is more time consuming, more expensive, more formal, and requires public disclosure of information. Defendants own a small restaurant that cannot afford the financial rigors of federal court litigation.

As a result, because the causes of action Plaintiffs assert are all subject to valid and binding Agreements, their Complaint should be dismissed – in its entirety – and arbitration should be compelled under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and under §§ 2, 3, and 4 of the Federal Arbitration Act ("FAA"). Alternatively, pursuant to FAA § 3, Plaintiffs' suit must be stayed, in its entirety, pending the outcome of compulsory arbitration.

## II.    STATEMENT OF FACTS

Defendant Mahasan, Inc. is a small Thai restaurant. See Declaration of Juntima Netprachak (hereinafter "Netprachak Decl.") ¶ 1. Individual Defendant Netprachak is the President and majority shareholder of Mahasan, Inc. Id. Plaintiffs were employed by Defendant Mahasan, Inc. See, generally, Docket Entry 2 (hereinafter "Compl.").

In or about the year 2013, Defendants instituted a company-wide arbitration policy whereby all employees agree to arbitrate any work-related dispute as a condition of their employment. See Netprachak Decl. ¶ 6.

2

When new employees commence employment with Defendants, they are presented with an employment application, federal I-9 form, federal W4 form, and a Notice and Acknowledgment of Pay Rate and Payday form.  Id. at ¶ 15.  After a three (3) month probationary period, every employee is issued an employment agreement with an arbitration provision.  Id. at ¶ 14.  The Agreement sets forth a dispute resolution policy between Defendants and each and every employee whereby the parties agree to a dispute resolution policy of final and binding arbitration. See, e.g., Id., Ex. A.

Defendants instituted the Agreements as a requirement and condition of all employees' employment in or about 2013.  Id. at ¶ 6.  All existing employees were informed of the company-wide arbitration policy at a staff meeting in or about January 2013.  Id. at ¶ 7.  Because not all of the existing employees were able to attend the first meeting, a second meeting was held in or about February 2013 to inform the remaining employees of the arbitration policy.  Id. at ¶ 8.

At both meetings, it was explained that all employees will be given an employment agreement containing an arbitration provision, and that employees cannot sue Defendants in court by operation of the arbitration provision but must instead resolve their disputes through arbitration. Id. at ¶¶ 9-11.  Additionally, Defendants issue new Agreements to their employees every year, usually on account of a change in the employees' compensation.  Id. at ¶¶ 21-22.

Each and every Agreement states, in part:

> **3. Claims.**  Employee and Employer agree to arbitrate all … "Claims" … for the resolution of all workplace disputes …. Employer and Employee agree that he [*sic*] procedures provided … will be the sole method used to resolve any claims as of the effective date of this Agreement, regardless of when the Claims arose. Employer and Employee agree to accept an arbitrator's award as the final, binding, and exclusive determination of all Claims. … Claims included [*sic*] but are not limited to: … violations of any … federal, state, … statute, … relating to … minimum wage and overtime … For example, the … Fair Labor Standards Act ….

3

…

**5. Arbitration.**  This Agreement is made pursuant to the [FAA], or if … inapplicable …, the arbitration law in the state of New York …

…

CLAIMS MAY NOT BE INITIATED OR MAINTAINED ON A … COLLECTIVE … ACTION BASIS EITHER IN COURT OR UNDER THESE RULES INCLUDING IN ARBITRATION. ANY CLAIMS … BROUGHT AS A … COLLECTIVE ACTION … WILL BE DECIDED … AS AN INDIVIDULE [*sic*] CLAIM.

See Netprachak Decl. Ex. A.

The Agreement also designates AAA as the arbitration tribunal.

**5.1 Venue.**  Arbitration shall be held in New York City by a panel of three arbitrators selected in accordance with the rules and regulations of the American Arbitration Association.

See Id. at 3 ¶ 5.1.

The Agreement also contains an anti-waiver clause as follows:

**5.3 Judicial Proceedings.** Initiation of, participation in, or removal of a legal proceeding does not constitute waiver of the right of obligation to arbitrate.  Employee and Employer consented that judgment upon the arbitration may be entered and enforced in any federal or state court having jurisdiction.

See Id. at 3 ¶ 5.3.

Plaintiff Nicolas commenced his employment with Defendants on or about March 6, 2013 and was presented with an Agreement three (3) months later.  Id. at ¶¶ 23-24.  Nicolas signed his Agreement on October 15, 2013.  Id. at ¶ 27, Ex. A.

Plaintiff Hernandez commenced employment with Defendants on or about June 2012.  Id. at ¶ 29.  Since Hernandez was an existing employee, he was presented with an Agreement in or about January 2013.  Id. at ¶ 30.  Hernandez signed his Agreement on February 10, 2013.  Id. at ¶ 31, Ex. B.

4

Plaintiff Genaro commenced employment with Defendants on or about August 12, 2012. Id. at ¶ 33. Since Genaro was an existing employee, he was presented with an Agreement in or about January 2013. Id. at ¶ 34. Genaro signed his Agreement on February 10, 2013. Id. at ¶ 35, Ex. C.

Plaintiff Lopez commenced employment with Defendants on or about August 24, 2011. Id. at ¶ 37. Since Lopez was an existing employee, he was presented with an Agreement in or about January 2013. Id. at ¶ 38. Lopez signed his Agreement on February 10, 2013. Id. at ¶ 39, Ex. D.

Plaintiff Vasquez commenced employment with Defendants on or about November 26, 2013 and was presented with an Agreement three (3) months later. Id. at ¶¶ 41-42. Vasquez continued his employment with Defendants after being notified of the company-wide arbitration policy. Id. at ¶ 44. Vasquez also subsequently signed an Agreement on June 8, 2014. Id. at ¶ 43, Ex. E.

Plaintiff Santiago commenced employment with Defendants on or about April 16, 2012. Id. at ¶ 46. Since Santiago was an existing employee, he was presented with an Agreement in or about January 2013. Id. at ¶ 47. Santiago continued his employment with Defendants after being notified of the company-wide arbitration policy. Id. at ¶ 49. Santiago also subsequently signed an Agreement on June 8, 2014. Id. at ¶ 48, Ex. F.

Plaintiff Longwilai commenced employment with Defendants on or about June 3, 2013 and was presented with an Agreement three (3) months later. Id. at ¶¶ 51-52. Longwilai continued her employment with Defendants after being notified of the company-wide arbitration policy and given an Agreement. Id. at ¶ 53-54, Ex. G.

5

Plaintiff Adelaido commenced employment with Defendants on or about October 26, 2011. Id. at ¶ 56. Because Adelaido's employment ended on or about January 7, 2012, he was not subject to any employment agreement as Defendants did not yet implement the arbitration policy. Id. ¶¶ 56-57.

On May 20, 2014, Plaintiffs filed the Complaint bringing various causes of action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") on behalf of themselves and a putative class of all other employees of Defendants. However, Plaintiffs cannot avoid the binding nature of the Agreement and its language which precludes their filing of the instant lawsuit.

### III.    STANDARD

Courts in this Circuit must determine four (4) issues in the context of a motion to compel arbitration: (1) whether the parties in fact agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if the parties assert federal statutory claims, whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. See JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004); accord Champion Auto Sales, LLC v. Polaris Sales Inc., 943 F. Supp. 2d 346, 351 (E.D.N.Y. 2013).

"The party seeking to compel arbitration must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue. To satisfy the initial burden, the moving party need not establish that the agreement would be enforceable, merely that one existed. Once the party has made a *prima facie* showing that an agreement existed, the party seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."

See Victorio v. Sammy's Fishbox Realty Co., LLC, No. 14-CIV.-8678 (CM), 2015 WL 2152703, at *10 (S.D.N.Y. May 6, 2015) (citing Hines v. Overstock.com, Inc., 380 Fed. Appx. 22, 24 (2d Cir. 2010); Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010); Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91–92 (2000); see also Schreiber v. K–Sea Transp. Corp., 9 N.Y.3d 331, 849 N.Y.S.2d 194, 196 (2007) (internal quotations omitted).

The Court must evaluate a motion to compel arbitration pursuant to the FAA, 9 U.S.C. § 4, under a standard similar to the standard for a summary judgment motion. See McCaddin v. Southeastern Marine Inc., 567 F. Supp. 2d 373 (E.D.N.Y. 2008) (citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also Mazza Consulting Group v. Canam Steel Corp., No. 08-CIV.-38 (NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008).  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." See Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4).  Pursuant to the FAA – 9 U.S.C. § 1, *et seq.* – the Court's analysis must begin and end with the Agreement and its express arbitration provision.  See 9 U.S.C. § 2 ("A written provision in any … contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable …"); see also American Express Co. v. Italian Colors Restaurant, ____ U.S. ____, 133 S.Ct. 2304 (2013) (holding that "[t]he text [of the FAA] reflects the overarching principle that arbitration is a matter of contract. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).

The FAA unequivocally compels courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which arbitration will be conducted."  See Italian Colors, ___ U.S. at ___, 133 S.Ct. at 2309 (2013) (internal quotations and citations omitted); see also Id. at 2308-09, citing AT&T Mobility, LLC v. Concepcion, ___ U.S. at ___, 131 S.Ct. at 1745 (2011)

("Congress enacted the FAA in response to widespread judicial hostility to arbitration"); Sutherland v. Ernst & Young, LLP, 726 F.3d 290 (2d Cir. 2013) (per curiam) (FLSA/NYLL case citing decision in Italian Colors, *supra*, and enforcing the arbitration agreement).

"Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." LaVoice v. UBS Fin. Servs., Inc., No. 11-CIV.-2308 (BSJ) (JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012). However, where all of the claims asserted are subject to arbitration, the Court should dismiss rather than stay the case. See, e.g., Reynolds v. de Silva, No. 09-CIV.-9218 (CM), 2010 WL 743510, at *8 (S.D.N.Y. Feb. 24, 2010) (noting "[a]ll courts … have followed the rule that, [w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (internal citations omitted)).

## IV.    ARGUMENT

### A.    The Parties Agreed to Arbitrate

With respect to the first factor, courts employ "ordinary principles of contract and agency" in order to determine whether the parties have agreed to arbitrate the claims asserted in the action. See Chanchani v. Salomon/Smith Barney, Inc., No. 99-CIV.-9219 (RCC), 2001 WL 204214, at *2 (S.D.N.Y. Mar. 1, 2001) (citing Thomson–CSF S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776–77 (2d Cir. 1995). A party will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his intent to be bound. Id. (citing Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (applying New York law) (emphasis added). Furthermore, the Second Circuit has noted that under New York law, continued employment after receiving notice of an arbitration agreement is sufficient to manifest assent to the terms. See Manigault v. Macy's East, LLC, 318 Fed. Appx. 6, 6 (2d Cir. 2009).

Here, the parties entered into a binding contract which expressly provides that the parties agree to submit all claims and disputes – including the claims that Plaintiffs brought in this action – to arbitration and to waive their rights to seek relief in such disputes in Court. Plaintiffs agreed to arbitrate either by signing and/or continuing their employment with Defendants upon being apprised of the arbitration provision. See Chanchani, 2001 WL 204214 at *2; Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where the plaintiff "voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration"); see also Gonzalez v. Toscorp, Inc., No. 97-CIV.-8158 (LAP), 1999 WL 595632, at *1, *2 (S.D.N.Y. Aug. 5, 1999) (finding that even in the absence of a written agreement to arbitrate, an employee who receives an arbitration policy and continues his employment is bound by its terms).

Plaintiffs' protest they cannot be bound to the arbitration policy because they do not speak English. However, Plaintiffs' inability to speak in English is of no consequence under the law. It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound. Failure to read a contract – even if such failure is brought about by an inability to understand the language – is not an excuse or defense to enforcement of the contract terms. See Horvath v. Banco Comercial Portugues, S.A., No. 10-CIV.-4697 (GBD), 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) aff'd, 461 Fed. Appx. 61 (2d Cir. 2012) (citing AXA Versicherung AG v. New Hampshire Ins. Co., 391 Fed. Appx. 25, 30 (2d Cir. 2010) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him") (citations omitted); Weiss v. La Suisse, 154 F. Supp. 2d 734, 737 (S.D.N.Y. 2001) ("While the Court was

originally troubled by the fact that the paperwork to obtain the policies was printed in a language the plaintiffs do not speak, defendants remind me of the ancient contract maxim that even a blind man must protect himself by procuring someone to read a contract for him"); Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007, 1013–14 (S.D.N.Y. 1985) (enforcing a contract clause despite it being in German when the rest of the contract was in English); Cheshire Place Associates v. West of England Ship Owners Mut. Ins. Ass'n (Luxembourg), 815 F. Supp. 593, 597 (E.D.N.Y. 1993) ("Presumably Frank reads and understands English. Even if he does not, failure to read or investigate the terms of the contract one signs is not a defense to enforcement of the contract"); Gaskin v. Stumm Handel GmbH, 390 F. Supp. 361, 367 (S.D.N.Y. 1975) (enforcing a contract clause in German even when one party did not speak German and asked for and did not receive an English translation).

Other Circuit Courts have held so. See Paper Express Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 758 (7th Cir. 1992) ("the fact that the rules were in German [does not] preclude enforcement of the [agreement]. In fact, a blind or illiterate party (or simply one unfamiliar with the contract language) who signs the contract without learning of its contents would be bound. Mere ignorance will not relieve a party of her obligations and she will be bound by the terms of the agreement"); Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable") (emphasis added); see also Walther v. Sovereign Bank, 386 Md. 412, 444 (2005) ( "if [plaintiffs] did not [read the document] before they signed [it], they have no persons to blame but themselves. As expressed [before], we are loath to rescind a conspicuous arbitration agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement").

10

Furthermore, there is no requirement that such arbitration agreements be signed knowingly and voluntarily.  See Katz v. Cellco P'ship, No. 12-CIV.-9193 (VB), 2013 WL 6621022, at *13 (S.D.N.Y. Dec. 12, 2013) (citations omitted).  In fact, countless Circuit Courts have held so.  See Morales, 541 F.3d at 224 ("applying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA"); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1372 & 1371 n. 12 (11th Cir. 2005) (concluding "general contract principles govern the enforceability of arbitration agreements and [ ] no heightened 'knowing and voluntary' standard applies"); see also Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 44 (1st Cir. 2012) (no heightened notice requirement to enforce agreement to arbitrate).

In fact, there is no requirement than an arbitration agreement has to be signed at all.  See 9 U.S.C. § 2; see also N.Y. C.P.L.R. § 7501 ("CPLR 7501 requires only that the agreement be in writing. It need not be signed by either party." (Alexander, Practice Commentary  C7501:2)) Therefore, some Plaintiffs' assertions that they not sign the agreement are irrelevant.  Indeed, a party seeking to enforce such an agreement need only show that it reasonably communicated the provision to the party it seeks to enforce it against.  See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).

Even if the Plaintiffs were to allege that they do not remember receiving a copy of the Agreement does not mean that the arbitration agreement was not reasonably communicated to them and that it is thereby somehow unenforceable. See Horvath, 2011 WL 666410, at *5 (citing Anwar v. Fairfield Greenwich, Ltd., 2010 WL 3910197, at *4 (S.D.N.Y. Sep. 27, 2010) (enforcing agreement despite Plaintiff's allegation that he never saw that it contained the forum selection clause); Madison Who's Who of Executive and Prof Is Throughout The World, Inc. v. SecureNet Payment Sys., LLC, No. 10-CIV.-364 (ILG), 2010 WL 2091691, at *3 (E.D.N.Y. May 25, 2010)

11

(citing Paine Webber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996)) (enforcing a forum selection clause despite Plaintiff's allegation that he never saw it when the arbitration agreement was incorporated by reference)).  Accordingly, if parties made agreements they could later avoid enforcement of by claiming that they did not read it, or read the document but did not understand it due to language or other issues, the entire purpose of reducing agreements to writing would be for naught.

In Dieng v. Coll. Park Hyundai, the plaintiff employees – whose first language was not English – were given arbitration agreements to review and sign upon commencing employment. No. CIV.A.DKC2009-0068, 2009 WL 2096076 at *1 (D. Md. Jul. 9, 2009).  The arbitration provision was in bold.  Id.  The Dieng Court held that it was not unconscionable to require the plaintiffs to seek redress for their claims in arbitration as they agreed, and compelled arbitration. Id. at *7, *8.

It is important to note that the Agreement is a two-way street.  Defendants also agreed to resolve their disputes with Plaintiffs through arbitration.  See, e.g., Netprachak Decl. Ex. A. Moreover, enforcing the Agreements Plaintiffs signed on condition of their employment does not waive any of the Plaintiffs' rights, as they are still able to pursue their statutory rights by arbitration; it simply carries forth the parties' agreement to have that dispute resolved in another forum.  See Sinnett v. Friendly Ice Cream Corp., 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (holding that the plaintiff has not waived any of his rights under the FLSA; rather he has agreed to have those rights adjudicated in an alternative forum than this Court).  Accordingly, this Court must find that the parties agreed to arbitrate, under the first part of the Second Circuit's test, dismiss this action and compel arbitration.

### B.  This Dispute Falls Within the Scope of the Arbitration Agreement

The parties here can and did agree to submit FLSA and NYLL claims to arbitration.  The Agreement directs the parties to submit to arbitration all disputes that concern "resolution of all workplace disputes or claims ... [including] violations of any … federal, state, county, municipal, or other government statute, ordinance, regulation or public policy relating to … minimum wage and overtime … For example, ... [the] Fair Labor Standards Act." See Netprachak Decl. Ex. A.

Courts have previously recognized and enforced parties' decisions to arbitrate FLSA and NYLL claims.  See Steele v. L.F. Rothschild & Co., 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (compelling arbitration of FLSA claims); Sinnett, 319 F. Supp. 2d at 445 (finding that "[plaintiff] did not waive any of his rights under the FLSA by entering into an arbitration agreement; rather he has agreed to have those rights adjudicated in an alternative forum than this Court" and therefore "claims brought under the FLSA may be addressed pursuant to an arbitration provision");  see also Metzler v. Harris Corp., No. 00-CIV.-5847 (HB), 2001 WL 194911, at *5 (S.D.N.Y. Feb. 26, 2001) (compelling arbitration of claims asserted under NYLL).

Thus, it follows that the Arbitration Agreements compel Plaintiffs to submit the claims brought in this action to arbitration.  Accordingly, this Court must weigh this second factor – whether Plaintiffs claims fall within the scope of the Agreement's arbitration provision – in favor of dismissal of this action and compelling arbitration.

### C.  Congress Did Not Intend FLSA Claims to be Nonarbitrable and, as such, this Court Need Not Decide Whether to Stay the Proceedings

As a general principle, "[i]t is well settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent." See Reynolds, 2010 WL 743510, at *5 (citations omitted).  "The burden of showing such legislative intent lies with the party opposing arbitration." Id. (citations omitted).

Courts in this District have repeatedly found FLSA claims to be arbitrable. Id. (citing Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 304 (S.D.N.Y. Feb. 4, 2010) (concluding that "Congress did not intend FLSA claims to be non-arbitrable"); Martin v. SCI Mgmt. L.P., 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) (finding "no indication" that Congress intended plaintiff's FLSA claim to be nonarbitrable); Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims."); Steele, 701 F. Supp. at 408 (compelling arbitration of FLSA claims).

Because Congress did not intend FLSA claims to be nonarbitrable – as Courts have held – an Order dismissing the First Amended Complaint is warranted (as opposed to staying the balance of the proceedings pending arbitration). See Arrigo, 704 F. Supp. 2d at 304-05 (holding that "[t]he FAA directs the district court, 'on application of one of the parties,' to enter a stay in a case where the asserted claims are 'referable to arbitration[;]' [h]owever, [a]ll courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings'").

### D. Defendants Did Not Waive Their Arbitration Defense

Plaintiffs argue that Defendants have waived their arbitration defense because the parties have engaged in protracted litigation. See Docket Entry 31. Plaintiffs' argument is meritless.

First, the Second Circuit has emphasized that there is a strong presumption in favor of arbitration and that waiver of the right to arbitration is "not to be lightly inferred." See Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters, 242 F.3d 52, 57 (2d Cir. 2001) (hereinafter "Coca-Cola").  Second, Defendants' arbitration defense is raised under FRCP Rules 12(b)(1) – lack of subject matter jurisdiction,  – 12(b)(6)  – failure to state a claim upon which relief can be granted, – and §§ 2, 3 and 4 of the FAA,

a statutory method for raising the arbitration defense. The defense of lack of subject matter jurisdiction may be asserted at any time. See Fed. R. Civ. P. 12(h)(3). The defense of failure to state a claim upon which relief can be granted may be made in a pleading permitted or ordered under FRCP Rule 7(a) – i.e., an answer, – by motion for judgment on the pleadings under FRCP 12(c), or at a trial on the merits. See Fed. R. Civ. P. 12(h)(2); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); Goodman v. Merrill Lynch & Co., Inc., 716 F. Supp. 2d 253, 258 (S.D.N.Y. 2010); see also Agrashell, Inc. v. Composition Materials Co., 40 F.R.D. 395, 397 (S.D.N.Y. 1966).

Third, in order to find that a party has waived their arbitration defense, courts must examine the facts of the particular case as the determination of waiver is not susceptible to bright line rules. See Coca-Cola, 242 F.3d at 57 (citation omitted). "Factors to consider [in determining whether a party has waived its right to arbitration] include (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." Id. (citing Kingston v. Latona Trucking Inc., 159 F.3d 80, 83 (2d Cir. 1998)).

Here, this case has remained dormant in large part due to Plaintiffs. The instant motion is the first substantive motion filed in this case, despite the fact that Plaintiffs could have moved for conditional certification under 29 U.S.C. § 216(b) as contemplated in their Complaint at any time. Most of all, Plaintiffs fail to adduce any evidence of prejudice because they have entirely failed to engage in discovery until we noted that it appears that the parties have not engaged in an exchange of discovery to date. See Docket Entry 34.

Fourth, it is worthy to note that Defendants' former counsel failed to review any documents relevant to the claims and defenses in this matter.  Id.  Defendants, having hired counsel, relied on the previous attorneys to be their voice to the Court.  A great miscarriage of justice would result in a finding that Defendants waived their arbitration defense on account of Defendants' understandable reliance on an attorney to come to its defense.

Finally, District Courts are required to send a dispute to arbitration regardless of the validity of any procedural defenses such as untimeliness so long as the existence of an arbitration agreement and a party's refusal to arbitrate is undisputed.  See Conticommodity Servs. Inc. v. Philipp & Lion, 613 F.2d 1222 (2d Cir. 1980) (holding that due to the undisputed existence of an arbitration agreement between the parties and the parties' refusal to arbitrate despite acknowledging the agreement, the district court was required to compel arbitration regardless of the validity of any procedural defenses such as untimeliness, etc.); Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda., 638 F.3d 150 (2d Cir. 2011) (holding that while contracts expressly provided that New York law governed arbitration procedure and administration, they made no mention of timeliness disputes or of any right of parties to *resort to courts in any circumstances*, and as contracts between parties were ambiguous as to whether timeliness disputes could be decided by court, such ambiguities were to be resolved in favor of arbitration) (emphasis added); see also PaineWebber Inc. v. Faragalli, 61 F.3d 1063 (3d Cir. 1995) (holding that former employer had not waived contractual right to arbitrate dispute with former employee by untimely assertion; arbitration demand was made within two months of date that employee filed complaint in state court, before there was any discovery or briefing on merits.).

Accordingly, Defendants did not waive their defense pursuant to FRCP Rule 12(b)(1), as Defendants can raise this defense at any time.  Finally, pursuant to the FAA and binding precedent,

this Court must submit this dispute to arbitration regardless of any procedural deficiencies – even if valid.  As such, Defendants have not waived their arbitration defense.

### E.  **Plaintiff Adelaido Must Proceed Individually**

Plaintiff Adelaido was employed by Defendants from October 26, 2011 through January 7, 2012.  See Netprachak Decl. ¶ 56.  Because Adelaido was employed prior to the implementation of Defendants' company-wide policy to arbitrate all disputes, Adelaido does not have to arbitrate his claim.  Plaintiffs' complaint alleges that Adelaido worked at Defendants from July 2011 through January 2012.  Compl. ¶¶ 17, 36.   Since Adelaido worked for such a short period of time, his claims are minimal and the parties should be required to mediate before litigation commences.

In any event, allowing Adelaido's individual claim to proceed does not change the fact that all remaining Plaintiffs and opt-in Plaintiffs thus far have agreed to arbitrate, and – more importantly – have agreed to waive their right to join in class or collective actions.  See Netprachak Exs. A-G.

Accordingly, Plaintiff Adelaido must proceed individually because all other Plaintiffs cannot participate in a class or collective action.  Defendants are, however, willing to arbitrate Adelaido's claims, as well.

## V.     **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court:

(a) dismiss the action as to all Plaintiffs (but Plaintiff Adelaido) with prejudice;

(b) compel all Plaintiffs (but Plaintiff Adelaido) to arbitrate their disputes;

(c) submit Plaintiff Adelaido's claims to mediation; and

(d) such other and further relief this Court deems just and proper.

Dated:    Lake Success, New York
          July 24, 2015

                                   MILMAN LABUDA LAW GROUP, PLLC

                                   By:   /s   Joseph M. Labuda, Esq._____
                                   Joseph M. Labuda, Esq.
                                   Emanuel Kataev, Esq.
                                   3000 Marcus Avenue, Suite 3W8
                                   Lake Success, NY 11042-1073
                                   (516) 328-8899 (office)
                                   (516) 328-0082 (facsimile)
                                   joe@mllaborlaw.com
                                   emanuel@mllaborlaw.com

                                   *Attorneys for Defendants*