```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ADELAIDO GALEANA and NICOLAS                                :
GALEANA, individually and on behalf of                      :
others similarly situated,                                  :
                                                            :              14-CV-3625 (VSB)
                                            Plaintiffs,     :
                                                            :              **OPINION & ORDER**
                          - against -                       :
                                                            :
MAHASAN INC. et al.,                                        :
                                                            :
                                            Defendants.     :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/11/2019

Appearances:

Michael A. Faillace
Michael Faillace & Associates, P.C.
New York, New York
*Attorneys for Plaintiffs*

Joseph M. Labuda
Emanuel Kataev
Milman Labuda Law Group, PLLC
Lake Success, New York
*Attorneys for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiffs Adelaido Galeana and Nicolas Galeana initiated this action on May 20, 2014, to remedy various alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as violations of New York Labor Law ("NYLL"), Article 6, § 190, *et seq.* and Article 19, § 650, *et seq.* (Doc. 2.) Plaintiffs Subonkot Longwilai ("Longwilai"), Mario Perez ("Perez"), Sergio Herrera ("Herrera"), Tomas Bautista ("Bautista"), Genaro Galeana, and Enrique Martinez Lopez ("Lopez") joined the lawsuit between December 22 and December 30, 2014. (Docs. 17–22.) On August 2, 2016, October 13, 2016, and January 12, 2017, I held an evidentiary hearing on several issues related to employment agreements purportedly entered into

by certain of the Plaintiffs which contain an arbitration clause ("Employment Agreements").
Before me are the parties' respective proposed findings of fact and conclusions of law. (Docs. 94–95.) For the reasons that follow, Defendants' motion to compel arbitration is GRANTED IN PART and DENIED IN PART. Because Plaintiffs Nicolas Galeana, Perez, Herrera, Bautista, Genaro Galeana, and Lopez entered into valid, enforceable Employment Agreements, the arbitration clause in those agreements controls and those Plaintiffs must arbitrate their claims. Because Plaintiffs Adelaido Galeana and Longwilai did not sign any agreement to arbitrate and did not otherwise sufficiently manifest assent to arbitrate, their claims are appropriately raised in a federal district court and may proceed in this matter.

## I.  **Factual and Procedural Background**[1]

Plaintiffs are former employees at a restaurant, Defendant Mahasan, Inc., doing business as Enthaice ("Mahasan"). Mahasan's president and majority shareholder, Juntima Netprachak ("Netprachak"), is also a Defendant. Although Defendants filed an answer on September 19, 2014, (Docs. 8, 9),[2] Defendants did not actively participate in the case for several months thereafter, (*see* Doc. 60, at 2). On December 4, 2014, an attorney filed a notice of appearance on behalf of Defendants, (Doc. 14), and Defendants substituted their counsel in March 2015, (Docs. 23, 26).

On April 28, 2015, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the action and to compel arbitration on the basis of the arbitration clause in the Employment Agreements. (Doc. 30.) On May 11, 2015, I granted

---

[1] The following summary is drawn from the allegations of the complaint, (Doc. 2, "Compl."), which I assume to be true for purposes of this motion. My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Docket entries 8 and 9 both appear to be copies of Defendants' answer. Docket entry 8 appears to have been filed in error as it bears the title Rule 7.1 Statement and names Golden Abacus Inc. (d/b/a Bonchon Chicken) and Danny Plouie, who have not been sued in this action, as Defendants in its first sentence.

Defendants' request for a pre-motion conference and directed Defendants to provide me with copies of the Employment Agreements in advance of the conference. (Doc. 35.) On June 11, 2015, Defendants provided copies of six Employment Agreements purportedly signed by the named and opt-in plaintiffs, but did not provide Employment Agreements for Plaintiffs Adelaido Galeana and Longwilai. (Doc. 39.) The Employment Agreements state, in pertinent part:

> Employee and Employer agree to arbitrate all [Claims] for the resolution of all workplace disputes or claims. Employer and Employee agree that the procedures provided in [the Employment Agreement] will be the sole method used to resolve any claims as of the effective date of [the Employment Agreement], regardless of when the Claims arose. Employer and Employee agree to accept an arbitrator's award as the final binding and exclusive determination of all Claims . . . . Claims include[] but are not limited to . . . [v]iolations of any . . . federal [or] state . . . statute, ordinance, regulation or public policy[, including] New York labor law [and the] Fair Labor Standards Act . . . .

(*See, e.g.*, Netprachak Decl. Ex. A.)[3] I held the pre-motion conference on June 18, 2015, and on July 24, 2015, Defendants filed their motion to dismiss and compel arbitration, (Doc. 44), memorandum of law, (Doc. 45), and declaration with exhibits, (Doc. 46).[4] On September 2, 2015, Plaintiffs filed their memorandum in opposition, (Doc. 52), and a declaration with exhibits, (Doc. 53). Defendants filed their reply memorandum on September 16, 2015. (Doc. 55.) In their opposition briefing, Plaintiffs claimed that five of the Plaintiffs had never seen or signed the Employment Agreements, suggesting that their signatures may have been forged. (Pls.' Opp. 3–4.)[5]

---

[3] "Netprachack Decl." refers to the Declaration of Juntima Netprachak, submitted July 24, 2015 in support of Defendants' motion to dismiss. (Doc. 46.)

[4] The exhibits consisted of the Employment Agreements: those for Plaintiffs Nicolas Galeana, Bautista (identified as Tomas Bautista Hernandez), Genaro Galeana (identified as Genaro Juarez Galeana), Lopez (identified as Enrique Martinez Lopez), Perez (identified as Mario Perez Vasquez), and Herrera (identified as Sergio Herrera-Santiago) have signatures, and the Employment Agreement for Longwilai is unsigned.

[5] "Pls.' Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated September 2, 2015. (Doc. 52.)

3

On March 18, 2016, based on the parties' disagreement about the validity of the Employment Agreements, I found that a hearing was required to address several issues: (1) the creation of the Employment Agreements; (2) the authenticity of the signatures on the Employment Agreements; (3) the date and circumstances under which the Employment Agreements were purportedly signed; and (4) any explanations provided to Plaintiffs by anyone concerning the Employment Agreements. (Doc. 60.) I held the hearing on August 2, 2016, October 13, 2016, and January 12, 2017. The parties submitted their proposed findings of fact and conclusions of law on April 19, 2017. (Docs. 94–95.) On November 16, 2018, I ordered the parties to submit a status update, in light of the closure of the restaurant at issue in the case. (Doc. 96.) On December 5, 2018, the parties submitted a joint letter. (Doc. 97.) Defendants asserted that the restaurant at issue closed permanently on November 10, 2017 because of a fire, and that none of the Defendants are in a position to pay any claim against them. (*Id.*) Plaintiffs dispute the characterization of the Defendants' ability to pay a claim, and they asserted in the letter that they intend to pursue their claims in court or in arbitration. (*Id.*)

## II.   **Legal Standard**

Defendants have moved to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and to stay the action in its entirety pending arbitration. (Doc. 44.)[6] Section 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). The Court must evaluate a motion to compel arbitration pursuant to the

---

[6] Defendants appear to have abandoned their motion to dismiss the complaint. (*See* Defs.' Proposal 57–58 (arguing that "New York law mandates a stay when a motion to compel is granted").) "Defs.' Proposal" refers to Defendants' Proposed Findings of Fact and Conclusions of Law in Support of Their Motion to Dismiss and Compel Arbitration, dated April 19, 2017. (Doc. 95.)

4

FAA under a standard similar to the standard for a summary judgment motion. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Doctor's Assocs., Inc. v. Distajo*, 944 F. Supp. 1010, 1014 (D. Conn. 1996), *aff'd*, 107 F.3d 126 (2d Cir. 1997); *see also Mazza Consulting Grp. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

"Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Indeed, "the purpose of Congress [in enacting the FAA] in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so*." *Dreyfuss v. eTelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 553 (2d Cir. 2009) (summary order) (emphasis in original) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Accordingly, "though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). "[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

### III. Discussion

#### A. *Choice of Law*

Because (1) all or a substantial part of the alleged events or omissions giving rise to the claims occurred in New York, (2) Defendants allegedly maintain their corporate headquarters and offices and operate a restaurant located in New York, (3) the Employment Agreements contain a clause specifying that they are to be interpreted, enforced, and governed under the laws

5

of New York, (Netprachak Decl. Exs. A–G ¶ 9), and (4) Plaintiffs were allegedly employed by Defendants in New York, (Compl. ¶ 16), I will apply New York law to the question of whether the parties entered into the Employment Agreements and assented to arbitration of any employment disputes. *See Software for Moving, Inc. v. La Rosa del Monte Exp., Inc.*, No. 09 Civ. 986(JGK), 2009 WL 1788054, at *7 (S.D.N.Y. June 23, 2009), *aff'd*, 419 F. App'x 41 (2d Cir. 2011).

Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists, *id.* (citing *Am. Centennial Ins. Co. v. Williams*, 649 N.Y.S.2d 190, 191 (2d Dep't 1996)), but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence, *see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venez.*, 991 F.2d 42, 46 (2d Cir. 1993). In addition to proving the existence of a valid arbitration agreement, under New York law a party seeking to enforce a contract must also prove its terms. *Dreyfuss*, 349 F. App'x at 555 (citing *Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.*, 619 N.Y.S.2d 260, 263 (1st Dep't 1994) ("The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract.")).

"[T]o create a binding contract, there must be a meeting of the minds." *Highland HC, LLC v. Scott*, 978 N.Y.S.2d 302, 306 (2d Dep't 2014). However, it is settled under New York law that "a party will not be excused from his failure to read and understand the contents" of a document. *Johnson v. Thruway Speedways, Inc.*, 407 N.Y.S.2d 81, 83 (3d Dep't 1978). The general rule under New York law is that "a party who executes a contract is considered bound by the terms of that contract." *Stern v. eSpeed, Inc.*, No. 06 Civ. 958(PKC), 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006). "[A]n inability to understand the English language, without more,

6

is insufficient to avoid this general rule." *Maines Paper & Food Serv. Inc. v. Adel*, 681 N.Y.S.2d 390, 391 (3d Dep't 1998). However, "[i]f the signer is illiterate, or blind, or ignorant of the alien language of the writing, *and the contents thereof are misread or misrepresented to him by the other party*, or even by a stranger, unless the signer be negligent, the writing is void." *Victorio v. Sammy's Fishbox Realty Co.*, No. 14 Civ. 8678(CM), 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015) (emphasis in original) (quoting *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 163 (1930)).

**B.** *Waiver*

Plaintiffs first argue that Defendants waived their right to compel arbitration. (*See* Pls.' Proposal 5–6.)[7] The "waiver of the right to arbitration is not to be lightly inferred," and the determination "is not susceptible to bright line rules." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (internal quotation marks omitted). In making a waiver determination, courts consider the following factors, among others: "(1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." *Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 57 (2d Cir. 2001) (quoting *S & R Co. of Kingston v. Latona Trucking Inc.*, 159 F.3d 80, 83 (2d Cir. 1998)).

Defendants failed to raise the arbitration defense when they filed their answer on September 19, 2014. (*See* Docs. 8–9.) Upon substituting counsel on March 13, 2015, (*see* Doc. 26), Defendants raised the arbitration defense within six weeks, (Doc. 30). Neither filing an

---

[7] "Pls.' Proposal" refers to Plaintiffs' Proposed Findings of Fact and Conclusions of Law, dated April 19, 2017. (Doc. 94.)

answer nor a months-long delay constitutes "a waiver of the right to arbitrate in the absence of prejudice to the opposing party." *ITT World Commc'ns, Inc. v. Commc'ns Workers of Am., AFL-CIO*, 422 F.2d 77, 82 (2d Cir. 1970). Here, the only prejudice identified by Plaintiffs was the obligation to "attend three Initial Conferences" and to "invest resources in simply locating Defendants' attorney." (Pls.' Proposal 6.) Plaintiffs do not identify any legal authority—and I have found none—suggesting that appearing for short conferences amounts to prejudice sufficient to constitute waiver. *Cf. Kingston*, 159 F.3d at 83 (finding that a party waives its right to arbitration if it "engages in protracted litigation" before attempting to enforce that right). Accordingly, I find that Plaintiffs were not prejudiced by Defendants' delay in raising the arbitration defense, and therefore Defendants did not waive their right to arbitrate.

### C. *Enforceability*

Plaintiffs next argue that the Employment Agreements are not enforceable because: (1) most Plaintiffs' signatures are forged, and one Plaintiff indisputably did not sign any Employment Agreement; and (2) the Employment Agreements are unconscionable. (*See* Pls.' Proposal 5–10.)

#### 1. Existence of the Employment Agreements

On July 24, 2015, Defendant Netprachak submitted a sworn declaration, attaching several Employment Agreements and averring that they were signed by Plaintiffs Nicolas Galeana, Bautista, Genaro Galeana, Lopez, Perez, and Herrera (the "Signature Plaintiffs"). (Doc. 46.) On October 13, 2016, Netprachak credibly testified that she received a copy of an arbitration

8

agreement[8] from a friend by email[9] in December 2012, which she adapted for use at Enthaice. (*See* Hr'g Tr. 193:4-197:25.) She also testified that she presented the agreement and explained its contents at restaurant-wide staff meetings in January and February 2013, at which employees read and signed copies of the agreement. (*Id.* at 198:10-208:20.) Rathakate Khuankaow, who was a chef at Enthaice during the relevant time period, corroborated Netprachak's testimony, testifying that he received and signed copies of the agreement in both 2013 and 2014, and that everyone at the restaurant also received and signed copies of the agreement. (*Id.* at 257:20-263:19.)

During the hearing, all of the Signature Plaintiffs testified that they did not sign the Employment Agreement. (*See* Hr'g Tr. 11:6-8 (Plaintiff Nicolas Galeana denying that he signed the Employment Agreement), 60:24–61:9 (Plaintiff Bautista denying that he signed any Employment Agreement), 82:13-24 (Plaintiff Genaro Galeana denying that he signed any documents when he began his employment or to continue his employment at Mahasan), 128:2-8 (Plaintiff Lopez denying that he ever signed an Employment Agreement), 29:2-7 (Plaintiff Perez denying that he signed any document to continue his employment at Mahasan), 46:20-47:3 (Plaintiff Santiago denying that he signed any document to continue his employment at Mahasan). However, I find that this testimony was not credible because the Signature Plaintiffs also denied signing documents that they clearly must have signed (such as their sworn declarations and retainer agreements with their counsel) and/or could not identify their own signatures in signature exemplars, even though the Signature Plaintiffs testified that the

---

[8] A copy of the arbitration agreement Netprachak received from her friend was admitted into evidence as Defendants' Exhibit DX64. (*See* Hr'g Tr. 194:22-195:2.) "Hr'g Tr." refers to the transcript of the evidentiary hearing which began on August 2, 2016, and which continued on October 13, 2016 and January 12, 2017. (Docs. 74, 79, 81.)

[9] A copy of the email was admitted into evidence as Defendants' Exhibit DX97. (*See* Hr'g Tr. 196:9-13.)

9

exemplars included valid signatures. (*See id.* at 14:15-14:23 (Plaintiff Nicolas Galeana denying that he signed his retainer agreement), 14:24-15:14 (Plaintiff Nicolas Galeana denying that he signed his sworn declaration), 76:19-77:3 (Plaintiff Bautista denying that he signed his sworn declaration), 85:15-86:5 (Plaintiff Genaro Galeana denying that he signed his July 20, 2016 sworn declaration), 86:14-20 (Plaintiff Genaro Galeana denying that he signed his September 2, 2015 sworn declaration), 40:9-20 (Plaintiff Perez denying that he signed his sworn declaration), 42:19-43:22 (same); Lopez Dep. 8:24-10:6 (Plaintiff Lopez denying that any signatures on his signature exemplar were his, even though the exemplar included a signature from his retainer agreement and his identification card, which he had admitted signing); Herrera Dep. 15:4-16:17 (Plaintiff Herrera denying that the signatures which appeared on his sworn declarations were his own).[10] Finally, another employee of Mahasan testified that, during early 2013, when Plaintiffs Nicolas Galeana, Bautista, Genaro Galeana, Lopez, and Herrera were all employed at Mahasan, (Hr'g Tr. 9:6-7, 60:4-5, 82:4-5, 127:5-6), all Mahasan employees received and signed employment agreements, (*id.* at 263:2-19).

Accordingly, I find that Defendants have demonstrated by a preponderance of the evidence that each of the Signature Plaintiffs entered into a signed Employment Agreement with Defendants. *See U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 443 (S.D.N.Y. 2010) ("[T]he signer of a deed or other instrument . . . is conclusively bound thereby." (quoting *Pimpinello*, 253 N.Y. at 162–63)); *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700–01 (S.D.N.Y. 2017) (noting that a party seeking arbitration must "prove the existence of

---

[10] "Lopez Dep." refers to pages 5–10 of the Deposition of Enrique Martinez Lopez, Mario Perez Vasquez, and Sergio Herrera, dated February 15, 2017, which is attached as Exhibit A to the Declaration of Emanuel Kataev, submitted in support of Defendants' motion to dismiss, dated March 30, 2017. (Doc. 88-1.) "Herrera Dep." refers to pages 4–17 of the Deposition of Enrique Martinez Lopez, Mario Perez Vasquez, and Sergio Herrera, dated February 15, 2017, which is attached as Exhibit A to the Declaration of Emanuel Kataev, submitted in support of Defendants' motion to dismiss, dated March 30, 2017. (Doc. 88-1.)

a valid arbitration agreement by a preponderance of the evidence" (citing *Progressive*, 991 F.2d at 46)).

It is undisputed that Plaintiff Longwilai never signed an Employment Agreement. (*See* Hr'g Tr. 284:1-3.) However, Defendants contend that, by continuing to work after she received a copy of the Employment Agreement, (*see id.* at 283:9-25), Longwilai manifested her assent to arbitrate, (*see* Defs.' Proposal 37–41). Although a contract may be "derived from the presumed intention of the parties as indicated by their conduct," *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) (internal quotation marks omitted), Defendants bear the burden of proving that Longwilai intended to be bound by the Employment Agreement, *see Software for Moving*, 2009 WL 1788054, at *7. Defendants do not identify any authority suggesting that, without additional facts and circumstances, continued employment after presentation with an agreement is sufficient to establish by a preponderance of the evidence that Longliwai intended to be bound by the Employment Agreement. *Cf. Comer v. Aon Corp.*, No. 06 CV 1734PAC, 2008 WL 2065993, at *4 (S.D.N.Y. May 2, 2008) (consideration of whether a valid contract has been formed, in the absence of a signature, requires examination of the totality of the circumstances, including evidence of "words, acts, and conduct" demonstrating "the intention of the parties to contract" (internal quotation marks omitted)). I have reviewed all of the documentary evidence submitted by the parties and the relevant testimony offered during the evidentiary hearing, and I find that Defendants have not demonstrated by a preponderance of the evidence that the words, acts, and conduct of Longwilai demonstrated an intent to be bound by an agreement to arbitrate. Accordingly, I find that Defendants and Plaintiff Longwilai did not enter into an Employment Agreement, and Longwilai is not obligated arbitrate her claims.

11

Finally, Defendants concede that Plaintiff Adelaido Galeana did not agree to arbitrate. (*See* Defs.' Proposal 1 n.1.) Accordingly, he also is not obligated arbitrate his claims.

### 2. Unconscionability of the Employment Agreements

Plaintiffs argue that the Employment Agreements are unconscionable because: (1) the Employment Agreements were intended to make Defendants immune from suit; (2) Plaintiffs do not speak English and did not understand the terms of the Employment Agreements; and (3) the Employment Agreements require Plaintiffs to pay the arbitration fee unless the "arbitrators find totally" in their favor. (*See* Pls.' Proposal 7–10.) I address each claim in turn below.

First, in support of their immunity argument, Plaintiffs cite only to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), a seminal Second Circuit case about the fairness of settlement agreements that resolve FLSA lawsuits. *Cheeks* mentions neither arbitration agreements nor immunity from suit; therefore, Plaintiffs' argument is unpersuasive.

Second, Plaintiffs correctly state that each Signature Plaintiff testified that he had limited English proficiency. (*See* Hr'g Tr. 8:9-14, 27:21-28:1, 45:7-15, 59:17-22, 81:17-22, 126:10-15). However, an "inability to understand the English language, without more, is insufficient to avoid the general rule that a party who executes a contract is considered bound by the terms of that contract." *Reyes v. Gracefully, Inc.*, No. 17-CV-9328 (VEC), 2018 WL 2209486, at *3 (S.D.N.Y. May 11, 2018) (internal quotation marks omitted); *see also Victorio*, 2015 WL 2152703, at *11; *Horvath v. Banco Comercial Portugues, S.A.*, No. 10 CIV. 4697(GBD), 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) ("Failure to read a contract, even if such failure is brought about by an inability to understand the language, is not an excuse or defense to enforcement of the contract terms."), *aff'd*, 461 F. App'x 61 (2d Cir. 2012). Plaintiffs' citations to opinions from courts in other circuits do not change this outcome. (*See* Pls.' Proposal 8–9.)

As an initial matter, none of these cases is binding on me. More importantly, each of them is distinguishable. There were no allegations in *American Heritage Life Insurance Co. v. Lang*, 321 F.3d 533 (5th Cir. 2003) that the plaintiffs did not have English proficiency, and both *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937 (S.D. Tex. 2001), and *Garza Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 2008105 (E.D. La. July 5, 2007), involved plaintiffs who, in addition to having limited English proficiency, were under pressure to sign the agreements. *See Prevot*, 133 F. Supp. 2d at 940 (noting that the plaintiffs "testified that they were pressured into signing" the agreements); *Garza Nunez*, 2007 WL 2008105, at *7 (finding that plaintiff "believed that if he did not sign, he would no longer receive medical care and might possibly lose his job"). Here, Plaintiffs claim that they did not sign the Employment Agreements, not that they were pressured into signing them.

Finally, with the exception of the initial filing fee, Defendants have agreed to stipulate that Plaintiffs will not have to pay any other arbitration fees. (*See* Defs.' Reply 7–8.)[11] The mere obligation to pay an arbitration filing fee does not alone render an agreement to arbitrate unconscionable. *Whitt v. Prosper Funding LLC*, No. 1:15-cv-136-GHW, 2015 WL 4254062, at *8 (S.D.N.Y. July 14, 2015).

Accordingly, I find that the Employment Agreements are not unconscionable.

IV. **Conclusion**

For the reasons stated herein, Defendants' motion to compel arbitration is GRANTED IN PART and DENIED IN PART. The motion is granted as to Plaintiffs Nicolas Galeana, Perez, Herrera, Bautista, Genero Galeana, and Lopez. This action is stayed as to those Plaintiffs

---

[11] "Defs.' Reply" refers to Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss and to Compel Arbitration, dated September 16, 2015. (Doc. 55.)

pending the outcome of arbitration. The motion is denied as to Plaintiffs Adelaido Galeana and Longwilai. No later than two weeks after the entry of this order, the parties are directed to submit: (1) a joint letter of no more than three pages updating the Court as to the status of the case, including whether Plaintiffs Adelaido Galeana and Longwilai intend to pursue their claims in this court; and if they do, (2) a revised proposed case management plan and scheduling order for the claims of those two Plaintiffs. A template for the order is available at http://nysd.uscourts.gov/judge/Broderick.

SO ORDERED.

Dated: July 11, 2019
New York, New York

_____
Vernon S. Broderick
United States District Judge