UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ADELAIDO GALEANA and NICOLAS GALEANA, *individually and on behalf of others similarly situated,*

*Plaintiffs,*

-against-

MAHASAN INC. (d/b/a ENTHAICE) and JUNTIMA NETPRACHAK,

*Defendants.*
----------------------------------------------------------X

Docket No.: 14-cv-03625

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## PROPOSED FINDINGS OF FACT

1. Plaintiffs, Adelaido Galeana and Nicolas Galeana ("Plaintiffs"), commenced this wage and hour action against Defendants, Mahasan Inc. (d/b/a Enthaice) ("Corporate Defendant") and Juntima Netprachak ("Individual Defendant") (collectively, "Defendants"), by filing the Complaint (and associated documents) on May 20, 2014. (*See* ECF Doc. No. 2).

2. Plaintiff Adelaido Galeana and Party Plaintiff Subongkot Longwilai[1] ("Movants") seek damages against the Corporate Defendant[2] for unpaid minimum wages, unpaid overtime compensation, unpaid spread of hours pay, statutory wage notice and wage statement violations, unreimbursed equipment costs, unlawful deductions from wages, as well as liquidated damages, pre-judgment interest, costs, and attorneys' fees under the Fair Labor Standards Act, 29 U.S.C.

1 Only Plaintiff Adelaido Galena and Party Plaintiff Subongkot Longwilai are seeking a default judgment because the other named Plaintiff and Party Plaintiffs are subject to an arbitration agreement and, therefore, cannot pursue their claims in court.

2 Movants are only seeking a default judgment against Defendant Mahasan Inc. (d/b/a/ Enthaice) because the individual Defendant, Juntima Netprachak, filed for Chapter 7 bankruptcy protection on March 29, 2021.

§ 201 et seq. ("FLSA"), the New York Labor Law ("NYLL"), and applicable rules and regulations.

3. At all relevant times, Defendants owned, operated, or controlled a Thai restaurant under the name "Enthaice."

4. At all relevant times, Defendants were Movants' employers within the meaning of the FLSA and New York Labor Law.

5. In each year from 2011 to 2014, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

6. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

Substantive Facts

*Plaintiff Adelaido Galeana*

7. Plaintiff Adelaido was employed by Defendants from approximately July 2011 until in or about January 2012.

8. Defendants ostensibly employed Plaintiff Adelaido as a delivery worker.

9. Plaintiff Adelaido was required to spend a significant portion of his work day performing non-tipped duties, including but not limited to, dishwashing; cutting vegetables; transporting food from the basement to the kitchen; twisting and tying up cardboard boxes; taking out garbage; cleaning the bathrooms, kitchen, windows, and sidewalk; sweeping; and stocking deliveries.

10. Although Plaintiff Adelaido ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped duties throughout his employment with Defendants.

11. Plaintiff Adelaido regularly handled goods in interstate commerce.

12. Plaintiff Adelaido's work duties required neither discretion nor independent judgment.

13. Throughout his employment with Defendants, Plaintiff Adelaido regularly worked in excess of 40 hours per week.

14. From approximately July 2011 until in or about January 2012, Plaintiff Adelaido worked, approximately, over ten hours per day six days per week (typically 63 hours per week).

15. Throughout his employment, Defendants paid Plaintiff Adelaido his wages in cash.

16. From approximately July 2011 until in or about January 2012, Defendants paid Plaintiff Adelaido a fixed salary of $275.00 per week.

17. However, Plaintiff Adelaido was frequently paid only $250.00 per week because Defendants unlawfully took deductions from his wages for lunch and meal breaks that Plaintiff was not permitted to, and did not, take.

18. Plaintiff Adelaido's wages did not vary even when he was required to stay later or work a longer day than his usual schedule.

19. Plaintiff Adelaido was never notified by Defendants that his tips were being included as an offset for wages.

20. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Adelaido's wages.

21. Plaintiff Adelaido was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign-in sheets or punch cards, that accurately reflected his actual hours worked.

22. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Adelaido regarding overtime and wages under the FLSA and NYLL.

23. Defendants did not provide Plaintiff Adelaido, with each payment of wages, an accurate statement of wages, as required by NYLL §195(3).

24. Defendants did not give any notice to Plaintiff Adelaido of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Party Plaintiff Subongkot Longwilai*

25. Party Plaintiff Longwilai was employed by Defendants from approximately June 3, 2013 until on or about December 13, 2014.

26. Defendants ostensibly employed Party Plaintiff Longwilai as a waitress.

27. Party Plaintiff Longwilai was required to spend a significant portion of her work day performing non-tipped duties, including but not limited to, preparing vegetables; filling drink and food containers; cleaning wine racks, tables, couches, behind the bar, the refrigerator, and the floor; changing toilet paper; and keeping track of receipts.

28. Although Party Plaintiff Longwilai ostensibly was employed as a waitress, she spent over 20% of each day performing non-tipped duties throughout her employment with Defendants.

29. Party Plaintiff Longwilai regularly handled goods in interstate commerce.

30. Party Plaintiff Longwilai's work duties required neither discretion nor independent judgment.

31. Throughout her employment with Defendants, Party Plaintiff Longwilai regularly worked in excess of 40 hours per week.

32. From approximately June 3, 2013 until on or about October 15, 2014, Party Plaintiff Longwilai worked from approximately 10:45 a.m. until 9:30 p.m. on Mondays; from approximately 10:45 a.m. until 11:00 p.m. on Tuesdays and Wednesdays; and from approximately 3:30 p.m. to 11:30 p.m. on Fridays and Saturdays (typically 51.25 hours per week).

33. From approximately October 16, 2014 until on or about December 13, 2014, Party Plaintiff Longwilai worked from approximately 11:00 a.m. until 11:00 p.m. on Mondays and Wednesdays; from approximately 11:00 a.m. until 9:30 p.m. on Tuesdays; and from approximately 5:00 p.m. to 11:30 p.m. on Fridays and Saturdays (typically 47.5 hours per week).

34. Throughout her employment, Defendants paid Party Plaintiff Longwilai her wages in cash.

35. From approximately June 3, 2013 until on or about October 15, 2014, Defendants paid Party Plaintiff Longwilai $259.00 per week.

36. From approximately October 16, 2014 until on or about December 13, 2014, Defendants paid Party Plaintiff Longwilai $5.00 per hour for all hours worked, including hours worked above 40 in a week.

37. Party Plaintiff Longwilai was never notified by Defendants that her tips were being included as an offset for wages.

38. Defendants did not account for these tips in any daily or weekly accounting of Party Plaintiff Longwilai's wages.

39. No notification, either in the form of posted notices or other means, was ever given to Party Plaintiff Longwilai regarding overtime and wages under the FLSA and NYLL.

40. Defendants did not provide Party Plaintiff Longwilai, with each payment of wages, an accurate statement of wages, as required by NYLL §195(3).

41. Defendants did not give any notice to Party Plaintiff Longwilai of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

42. Defendants required Party Plaintiff Longwilai to purchase tools of the trade with her own funds, namely, a unform, which cost $200.00.

## PROPOSED CONCLUSIONS OF LAW

### Minimum Wage and Overtime Compensation

43. At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. 29 U.S.C. §206(a)(1). Employees must be paid one-and-one-half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1).

44. From 2011 to December 30, 2013, the applicable minimum wage rate in New York State was $7.25 per hour. On December 31, 2013, the applicable minimum wage rate in New York State increased to $8.00 per hour. N.Y. COMP. CODES R. & REGS. ("NYCRR") tit. 12, § 146-1.4. New York's rules on overtime explicitly incorporate those of the FLSA, and thus

require pay at one-and-one-half times the regular normal rate for each hour worked over forty (40) hours in a week. *Id*.

45. Defendants did not pay Movants minimum wage and overtime compensation at the lawful rates.

46. The onus is on the employer to maintain proper records of employees' hours worked. 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, at *8 (S.D.N.Y. 2004) (the court accepted the plaintiffs' estimates of hours worked).

47. Under the New York Hospitality Industry Wage Order, the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR §146-3.5.

48. Accordingly, for the time periods in which Defendants paid Movants fixed weekly rates, Movants' calculated regular rate of pay is determined by dividing their weekly rates (credited weekly pay) by forty. Then, their calculated regular rate of pay is multiplied by 1.5 to determine their calculated overtime rate of pay.

<u>Spread of Hours Pay</u>

49. Movants are entitled to "spread-of-hours" pay under the New York Spread of Hours Wage Order, which requires employers to pay workers an additional hour of pay, at the basic minimum hourly rate, when their workday is more than ten (10) hours. 12 NYCRR § 146-

1.6; *Angamarca v. Pita Grill 7 Inc.*, 2012 U.S. Dist. LEXIS 108322, at *16-17 (S.D.N.Y. Aug. 2, 2012).

Wage Statement and Wage Notice

50. New York law requires an employer to provide an employee with written notice of his or her wages at the time of hiring, and to provide a wage statement with each payment of wages. NYLL §§195(1), (3). At the time of Defendants' violations, the NYLL imposed statutory damages of $50.00 per week for an employer's failure to provide the wage notice, up to a $2,500.00 maximum penalty, and $100.00 per week for the failure to provide wage statements, up to a $2,500.00 maximum penalty. NYLL §§198(1-b), (1-d).

Tools of the Trade

51. Federal law requires that wages be paid "free and clear" of all "kick-backs directly or indirectly to the employer or to another person for the employer's benefit." 20 C.F.R. § 531.35.

52. Similarly, New York State law provides that if an employee must spend his or her own funds to purchase necessary equipment for the performance of his or her job, such expenses "must not bring the employee's wage below the required minimum wage." 12 N.Y.C.R.R. § 146-2.7(C); *see also Hernandez v. JRPAC*, 2016 U.S. Dist. Lexis 75430, at *90-96 (S.D.N.Y. June 9, 2016); *Salinas v. Starjem*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015).

Statute of Limitations Periods Under the FLSA and NYLL

53. Movants are entitled to a three-year limitations period under the FLSA, as the uncontradicted evidence in the record supports a finding of willfulness and lack of good faith. Under the FLSA, when the underpayment by the employer is willful, the limitations period

increases from two (2) to three (3) years. 29 U.S.C. § 255(a). Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, *inter alia*, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Courts often also find that a defendant's failure to participate in the proceedings is to be taken as additional support for a finding of willfulness within the meaning of FLSA. *See Santillan v. Henao*, 822 F. Supp.2d 284, 297 (E.D.N.Y. 2011) ("Many courts have found that a defendant's default, in itself, may suffice to support a finding of willfulness."); *Blue v. Finest Guard Servs. Inc.*, 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010) ("Since the corporate defendant has failed to appear in court for this case, and a default judgment has [been] entered against it, its failure to pay plaintiffs' minimum wages is deemed to be willful.")

54. Under the New York Labor Law, the limitations period is six years, regardless of willfulness. NYLL § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. See *Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay and unpaid spread of hours pay under the New York Labor Law should be calculated from the start of Movants' employment, which was less than six years from the filing date.

<u>Liquidated Damages</u>

55. Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206

or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Corporate Defendant did not comply with this Court's Order dated February 23, 2021 and is thereby in default. Consequently, it cannot meet this burden, and thus an award of liquidated damages is mandatory. Accordingly, liquidated damages should be awarded in an amount equal to the unpaid minimum wages, overtime compensation, and spread of hours pay. 29 U.S.C. § 216(b).

56. Under the NYLL, "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article," the employee is entitled to liquidated damages equal to one hundred percent of the total of such underpayments found to be due unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. NYLL § 663(1).

57. Given the uncontroverted evidence of the Corporate Defendant's lack of good faith and willfulness, Movants are entitled to liquidated damages under the NYLL, computed at 100% for unpaid minimum wages, overtime compensation, and spread of hours pay.

<u>Pre-Judgment and Post-Judgment Interest</u>

58. Under New York law, the court may award pre-judgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award for unpaid back pay. *See Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (N.Y. County 1997). This is because under New York law, pre-

judgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money. *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *Reilly v. Natwest Mkts. Group,* 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000). In addition, under New York law, pre-judgment interest can be awarded in addition to liquidated damages. This is so because, under New York law, liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages. *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981).

59. Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9 %) per annum simple interest. *See Perero v. Food Jungle, Inc.*, No. 05 Civ 4347, 2006 WL 2708055, at *8 (E.D.N.Y. Aug. 7, 2006). As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. See *Perero*, 2006 WL 2708055, at *8; *Koylum, Inc. v. Peksen Realty Corp.*, 357 F. Supp. 2d 593, 597 (E.D.N.Y. ), *aff'd in pertinent part and vacated in part*, 160 Fed.Appx. 91 (2d Cir. 2005). Thus, pre-judgment interest on Movants' back pay awards should be computed from the median of each relevant period to the date of judgment.

60. Movants also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total

amount of judgment under the NYLL shall automatically increase by fifteen percent, as required by NYLL § 198(4).

Attorneys' Fees and Costs

61. The FLSA and the NYLL contain fee-shifting provisions in actions to recover unpaid wages. Pursuant to the FLSA, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Under the NYLL, "If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover. . . costs [and] all reasonable attorney's fees." NYLL § 663(1).

## CONCLUSION

62. Based on the above information, Movants should be awarded the following damages against the defaulting Corporate Defendant:

| Damages Category | Amount |
|---|---|
| Minimum Wages and Overtime Compensation | $21,439.81 |
| Liquidated Damages on Minimum Wages and Overtime Compensation | $21,439.81 |
| Pre-Judgment Interest on Minimum Wages and Overtime Compensation | $15,819.49 |
| Unpaid Spread of Hours (SOH) Pay | $3,046.50 |
| Liquidated Damages on unpaid SOH | $3,046.50 |
| Pre-Judgment Interest on unpaid SOH Pay | $2,286.00 |
| Wage Notice | $5,000.00 |
| Wage Statements | $5,000.00 |
| Tools of the Trade | $200.00 |

| Attorneys' Fees | $23,572.50 |
| --- | --- |
| Attorneys' Costs | $581.00 |
| **Total** | $101,231.61 |

63. As shown herein, no live testimony is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by Movants that allows damages to be calculated with reasonable certainty. The calculation of damages in accordance with the methods described above is set forth in the accompanying damages chart.

64. Movants also request pre-judgment interest on unpaid minimum and overtime wages from July 28, 2021 until the time of judgment in an amount to be determined at the time of judgment.

Dated: New York, New York
July 28, 2021

/s/ *William K. Oates*

William K. Oates, Esq.
Michael Faillace & Associates, P.C.
*Attorneys for Movants*
60 East 42nd Street, Suite 4510
New York, New York 10165
Tel.: (212) 317-1200