UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ADELAIDO GALEANA and NICOLAS
GALEANA, *individually and on behalf of others similarly situated,*

                        *Plaintiffs*,

        -against-

MAHASAN INC. (d/b/a ENTHAICE) and
JUNTIMA NETPRACHAK,

                        *Defendants.*
------------------------------------------------------------------X

Docket No.: 14-cv-03625 (VSB) (RNF)

**INQUEST MEMORANDUM**

Plaintiff Adelaido Galeana and Party Plaintiff Subongkot Longwilai ("Movants")[1], by their attorneys, Michael Faillace & Associates, P.C., submit the following inquest memorandum.

## STATEMENT OF FACTS

Movants were employed by Defendants Mahasan Inc. (d/b/a Enthaice) ("Corporate Defendant") and Juntima Netprachak ("Individual Defendant") (collectively, "Defendants"). (Complaint ¶ 1; Galeana Dec. ¶ 3; Longwilai Dec. ¶ 3).

Defendants owned, operated, or controlled a Thai restaurant under the name "Enthaice" located at 1598 Third Avenue, New York, New York 10128. (Complaint ¶¶ 2, 19; Galeana Dec. ¶ 4; Longwilai Dec. ¶ 4).

At all relevant times, Defendants were Movants' employers within the meaning of the FLSA and New York Labor Law. (Complaint ¶¶ 26, 28; Galeana Dec. ¶ 3; Longwilai Dec. ¶ 3).

---

[1] Only Plaintiff Adelaido Galena and Party Plaintiff Subongkot Longwilai are seeking a default judgment because the other named Plaintiff and Party Plaintiffs are subject to an arbitration agreement and, therefore, cannot pursue their claims in court.

In each year from 2011 to 2014, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).  (Complaint ¶ 32; Galeana Dec. ¶ 13; Longwilai Dec. ¶ 13).

In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.  (Complaint ¶ 33, 45; Galeana Dec. ¶ 12; Longwilai Dec. ¶ 12).

*Plaintiff Adelaido Galeana*

Plaintiff Adelaido was ostensibly employed as a delivery worker from approximately July 2011 until in or about January 2012.  (Complaint ¶¶ 36, 37, Galeana Dec. ¶¶8, 9).

Throughout his employment, Plaintiff Adelaido spent over half of his workday performing non-delivery duties.  (Complaint ¶¶ 5, 38,  Galeana Dec. ¶10).

Plaintiff Adelaido regularly handled goods in interstate commerce. (Complaint ¶39, Galeana Dec. ¶12).

Plaintiff Adelaido's work did not require discretion nor independent judgment.  (Complaint ¶40; Galeana Dec. ¶11)

Throughout his employment, Plaintiff Adelaido worked approximately 63 hours per week. (Complaint ¶¶ 41, 42; Galeana Dec. ¶¶ 14, 15).

Throughout his employment, Defendants paid Plaintiff Adelaido his wages in cash. (Complaint ¶ 43; Galeana Dec. ¶16).

Throughout his employment, Defendants paid Plaintiff Adelaido a fixed salary of $275.00 per week. (Complaint ¶44; Galeana Dec. ¶17).  However, Plaintiff Adelaido was frequently paid

2

only $250.00 per week because Defendants unlawfully took deductions from his wages for lunch and meal breaks that Plaintiff was not permitted to, and did not, take. (Complaint ¶45; Galeana Dec. ¶18).

Plaintiff Adelaido's wages did not vary even when he was required to stay later or work a longer day than his usual schedule. (Complaint ¶46; Galeana Dec. ¶19).

Plaintiff Adelaido was never notified by Defendants that his tips were being included as an offset for wages. (Complaint ¶49; Galeana Dec. ¶20). Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Adelaido's wages. (Complaint ¶50; Galeana Dec. ¶ 21).

Plaintiff Adelaido was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign-in sheets or punch cards, that accurately reflected his actual hours worked. (Complaint ¶51; Galeana Dec. ¶23).

No notification, either in the form of posted notices or other means, was ever given to Plaintiff Adelaido regarding overtime and wages under the FLSA and NYLL. (Complaint ¶52; Galeana Dec. ¶25).

Defendants did not provide Plaintiff Adelaido, with each payment of wages, an accurate statement of wages, as required by NYLL §195(3). (Complaint ¶53; Galeana Dec. ¶24). Further, Defendants did not provide Plaintiff Adelaido with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL §195(1). (Complaint ¶ 54; Galeana Dec. ¶26).

*Party Plaintiff Subongkot Longwilai*

Party Plaintiff Longwilai was employed by Defendants from approximately June 3, 2013 until on or about December 13, 2014. (Longwilai Dec. ¶ 7).

Defendants ostensibly employed Party Plaintiff Longwilai as a waitress. (Longwilai Dec. ¶ 9).

Party Plaintiff Longwilai was required to spend a significant portion of her work day performing non-tipped duties, including but not limited to, preparing vegetables; filling drink and food containers; cleaning wine racks, tables, couches, behind the bar, the refrigerator, and the floor; changing toilet paper; and keeping track of receipts. (Longwilai Dec. ¶ 10).

Party Plaintiff Longwilai regularly handled goods in interstate commerce. (Longwilai Dec. ¶ 12).

Party Plaintiff Longwilai's work duties required neither discretion nor independent judgment. (Longwilai Dec. ¶ 11).

From approximately June 3, 2013 until on or about October 15, 2014, Party Plaintiff Longwilai worked from approximately 10:45 a.m. until 9:30 p.m. on Mondays; from approximately 10:45 a.m. until 11:00 p.m. on Tuesdays and Wednesdays; and from approximately 3:30 p.m. to 11:30 p.m. on Fridays and Saturdays (typically 51.25 hours per week). (Longwilai Dec. ¶ 15).

From approximately October 16, 2014 until on or about December 13, 2014, Party Plaintiff Longwilai worked from approximately 11:00 a.m. until 11:00 p.m. on Mondays and Wednesdays; from approximately 11:00 a.m. until 9:30 p.m. on Tuesdays; and from approximately 5:00 p.m. to 11:30 p.m. on Fridays and Saturdays (typically 47.5 hours per week). (Longwilai Dec. ¶ 16).

Throughout her employment, Defendants paid Party Plaintiff Longwilai her wages in cash. (Longwilai Dec. ¶ 17).

From approximately June 3, 2013 until on or about October 15, 2014, Defendants paid Party Plaintiff Longwilai $259.00 per week.  (Longwilai Dec. ¶ 18).

From approximately October 16, 2014 until on or about December 13, 2014, Defendants paid Party Plaintiff Longwilai $5.00 per hour for all hours worked, including hours worked above 40 in a week.  (Longwilai Dec. ¶¶ 19, 20).

Party Plaintiff Longwilai was never notified by Defendants that her tips were being included as an offset for wages.  (Longwilai Dec. ¶ 21).  Further, Defendants did not account for these tips in any daily or weekly accounting of Party Plaintiff Longwilai's wages.  (Longwilai Dec. ¶ 22).

No notification, either in the form of posted notices or other means, was ever given to Party Plaintiff Longwilai regarding overtime and wages under the FLSA and NYLL. (Longwilai Dec. ¶ 26).

Defendants did not provide Party Plaintiff Longwilai, with each payment of wages, an accurate statement of wages, as required by NYLL §195(3).  (Longwilai Dec. ¶ 25).  Further, Defendants did not give any notice to Party Plaintiff Longwilai of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).  (Longwilai Dec. ¶ 27).

Defendants required Party Plaintiff Longwilai to purchase tools of the trade with her own funds, namely, a unform, which cost $200.00.

## **LEGAL ANALYSIS OF DAMAGES**

<u>Minimum Wage and Overtime Compensation</u>

At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. From 2011 to December 30, 2013, the applicable minimum wage rate in New York State was $7.25 per hour. On December 31, 2013, the applicable minimum wage rate in New York State increased to $8.00 per hour.

Under the FLSA, employees must be paid one-and-one half times their regular rate of pay for each hour worked over forty (40) hours in a week. 29 U.S.C. § 207(a)(1). New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour worked over forty (40) hours in a week. N.Y. COMP. CODES R. & REGS. tit. 12 ("NYCRR), § 146-1.4.

Under the New York Hospitality Industry Wage Order, the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR §146-3.5.

The onus is on the employer to maintain proper records of employees' hours worked. 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, at *8 (S.D.N.Y. 2004) (the court accepted the plaintiffs' estimates of hours worked).

Defendants are liable to Movants for unpaid minimum wages and overtime compensation.

Movants have established that during the period they were employed by Defendants they worked more than 40 hours per week. Towards that end, Plaintiff Adelaido worked approximately 63 hours per week. (Complaint ¶¶ 41, 42; Galeana Dec. ¶¶ 14, 15). In addition, Party Plaintiff Longwilai worked from 47.5 to 51.25 hours per week (Longwilai Dec. ¶¶ 15, 16).

Except as stated below, Defendants paid Movants fixed weekly rates throughout their employment that did not vary, regardless of whether they worked in excess of forty hours per week. However, from October 16, 2014 to December 13, 2014, Defendants paid Movant Longwilai $5.00 per hour for all hours worked, including hours worked in excess of forty hours per week.

For the time periods in which Defendants paid Movants fixed weekly rates, Movants' calculated regular rate of pay is determined by dividing their weekly rates (credited weekly pay) by forty. Then, their calculated regular rate of pay is multiplied by 1.5 to determine their calculated overtime rate of pay.

Based on the foregoing, Movant's calculated rates of pay fell below the lawful minimum wage and overtime rates. Consequently, Movant Adelaido sustained $7,423.50 in damages for unpaid minimum wages and overtime compensation and Movant Longwilai sustained $14,016.31 for such damages.

Spread of Hours Pay

Movants are entitled to "spread-of-hours" pay under the New York Spread of Hours Wage Order, which requires employers to pay workers an additional hour of pay, at the basic minimum hourly rate, when their workday is more than ten (10) hours. 12 NYCRR § 146-1.6; *Angamarca v. Pita Grill 7 Inc.*, 2012 U.S. Dist. LEXIS 108322, at *16-17 (S.D.N.Y. Aug. 2, 2012).

7

Movant Longwilai worked more than ten hours per day three times per week throughout her employment with Defendants.

Movant Galeana worked more than ten hours per day six times per week throughout his employment with Defendants.

Accordingly, Movants are entitled to $3,046.50 in unpaid spread of hours pay.

Wage Notice and Wage Statement Violations

Defendants never provided Movants with annual notices of their wages, or accurate wage statements, as required by NYLL §§ 195(1) and 195(3) respectively.

At the time of Defendants' violations, the NYLL imposed statutory damages of $50.00 per week for an employer's failure to provide the wage notice, up to a $2,500.00 maximum penalty, and $100.00 per week for the failure to provide wage statements, up to a $2,500.00 maximum penalty.  NYLL §§198(1-b), (1-d).

Movants are therefore entitled to statutory damages in the maximum amount of $2,500.00 each under NYLL § 195(1) and $2,500.00 each under NYLL § 195(3), for a total of $10,000.00.

Tools of the Trade

Federal law requires that wages be paid "free and clear" of all "kick-backs directly or indirectly to the employer or to another person for the employer's benefit." 20 C.F.R. § 531.35.

Similarly, New York State law provides that if an employee must spend his or her own funds to purchase necessary equipment for the performance of his or her job, such expenses "must not bring the employee's wage below the required minimum wage." 12 N.Y.C.R.R. § 146-2.7(C); *see also Hernandez v. JRPAC*, 2016 U.S. Dist. Lexis 75430, at *90-96 (S.D.N.Y. June 9, 2016); *Salinas v. Starjem*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015).

Defendants required Party Plaintiff Longwilai to purchase tools of the trade with her own funds, namely, a unform, which cost $200.00. Accordingly, the Corporate Defendant is liable to Party Plaintiff Longwilai in the amount of $200.00.

Three Year Statute of Limitations Under FLSA

Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years.  29 U.S.C. § 255(a).

Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. *See Hardrick v. Airway Freights Systems, Inc.*, 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

In the present matter, Defendant was aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendant knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defendant did not know of the FLSA, the Defendant' actions are still willful because the Defendant failed to investigate whether their compensation policy was legal. *See Hardrick*, 63 F. Supp. 2d at 904.

As Plaintiff can establish that Defendant' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from April 8, 2013, three

9

years before the complaint was filed. *See, e.g., Decraene v. Neuhaus* (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

Liquidated Damages

Pursuant to the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Corporate Defendant did not comply with this Court's Order dated February 23, 2021 (Exhibit D) and is thereby in default. Consequently, it cannot meet this burden, and thus an award of liquidated damages is mandatory. Accordingly, liquidated damages should be awarded in an amount equal to: 1) the unpaid minimum wages and overtime wages; and 2) the unpaid spread of hours pay.

Likewise, under the NYLL, "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article," the employee is entitled to liquidated damages equal to one hundred percent of the total of such underpayments found to be

10

due unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. NYLL § 663(1).

Given the uncontroverted evidence of the Corporate Defendant's lack of good faith, Movants are entitled by statute to liquidated damages under the NYLL, computed at 100% for: 1) unpaid minimum and overtime wages; and 2) unpaid spread of hours pay.

Prejudgment Interest

Movants also seek an award of prejudgment interest on the New York law claims for unpaid wages. Under New York law, the court shall award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award for unpaid wages. *See* NYLL §663(1)

Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest. *See Perero v. Food Jungle, Inc.*, No. 05 Civ 4347, 2006 WL 2708055, at *8 (E.D.N.Y. Aug. 7, 2006). As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. See *Perero*, 2006 WL 2708055, at *8; *Koylum, Inc. v. Peksen Realty Corp.*, 357 F. Supp. 2d 593, 597 (E.D.N.Y. ), *aff'd in pertinent part and vacated in part*, 160 Fed.Appx. 91 (2d Cir. 2005). Thus, pre-judgment interest on Movants' awards for unpaid wages should be computed from the median of each relevant period to the date of judgment.

11

Additional Damages if Unpaid

If any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4)

Costs and Attorneys' Fees

The FLSA and the NYLL contain fee-shifting provisions in actions to recover unpaid wages. Pursuant to the FLSA, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Under the NYLL, "If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover. . . costs [and] all reasonable attorney's fees." NYLL § 663(1).

A breakdown of the attorneys' fees and costs incurred in litigating the within action, in the form of this firm's standard billing report, is attached hereto as Exhibit M. Based on those records, Movants should be awarded attorneys' fees of $23,572.50 and costs of $581.00 totaling $24,153.50.

Dated: New York, New York
July 28, 2021

/s/ William K. Oates
William K. Oates
MICHAEL FAILLACE & ASSOCIATES, P.C.
*Attorneys for Movants*